## WESTON SECURITIES CORPORATION & others[1] vs. ARA AYKANIAN & others.[2]

No. 97-P-0398.

Suffolk. October 13, 1998. - December 30, 1998.

Present: WARNER, C.J., GREENBERG, & GILLERMAN, JJ.

*Securities. Federal Arbitration Act. Federal Preemption. Statute,* Federal preemption. *Arbitration,* Appeal of order compelling arbitration, Arbitrable question, Waiver. *Waiver.*

General Laws c. 251, § 18, of the Massachusetts Uniform Arbitration Act, which does not permit an appeal from an order compelling arbitration, is not preempted by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (1994), which permits an appeal, where the State procedural rule does not undermine the Federal goal of enforcement of agreements to arbitrate in Federal and State courts. [75-77]

This court expressed the view that securities dealers who unilaterally agreed to arbitrate such claims with its customers as are required under the code of the National Association of Securities Dealers thereby, under § 35 of the code, undertook to submit to the arbitrator in the first instance the arbitrability of such claims. [77-81]

CIVIL ACTION commenced in the Superior Court Department on March 15, 1996.

The case was heard by *Patrick F. Brady,* J., on motions for summary judgment, and a motion to continue stay of arbitration was heard in the Appeals Court by *Porada,* J.

*Richard A. Goren* for the plaintiffs.

*Joseph C. Long* for the defendants.

GILLERMAN, J. On March 15, 1996, the plaintiffs (collectively, Weston) commenced an action in Superior Court seeking to enjoin the defendants from proceeding with arbitration before the National Association of Securities Dealers (NASD). The plaintiffs have appealed an order of the Superior Court ordering the arbitration to proceed and the entry of summary judgment in favor of the defendants. The availability of that appeal is the central issue in this case.

The material facts are not in dispute. The plaintiff Weston Securities Corporation is a member of the NASD. The plaintiffs Biggar and Horowitz are registered principals, and Robbat a

---

[1]Douglas A. Biggar, I. Richard Horowitz, and Joseph Robbat, Jr.

[2]The complaint names fifty-three additional individual defendants.

registered representative, of Weston Securities Corporation. Each plaintiff is signatory to a Uniform Application for Securities Industry Registration or Transfer (U-4 form), under the terms of which each plaintiff agreed to arbitrate all disputes required to be arbitrated under the NASD Code of Arbitration Procedure (NASD code). Section 12(a) of the NASD code requires Weston to arbitrate any "dispute, claim or controversy . . . between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons . . . upon the demand of the customer."

In June, 1994, the defendants, claiming to be customers of Weston, each filed· a Uniform Submission Agreement (agreement) for arbitration with the NASD. The agreements bound the defendants to arbitrate all their claims against Weston.[3]

Weston refused to execute the agreements, claiming that the defendants' claims either were not arbitrable under the NASD code or, to the extent that they fell within the scope of the NASD code, were barred by the six-year rule.[4] On April 5, 1995, Weston applied to the director of arbitration of NASD (director) to dismiss the defendants' claim to arbitration. On October 30, 1995, the director ruled that the defendants were public customers of Weston, and therefore had standing to compel arbitration against each of the plaintiffs. The director referred all the defendants' claims to a panel of arbitrators, other than claims prior to June 16, 1988. Weston brought this action following the director's decision.

In June, 1996, a judge of the Superior Court issued a preliminary injunction enjoining the defendants from proceeding with arbitration at the NASD, and ordered the parties to submit cross motions for summary judgment. In response to the submissions of the parties, the same judge denied Weston's motion for summary judgment, allowed the defendants' motion for summary judgment, and entered an order compelling Weston to proceed with arbitration before the NASD.[5] Weston filed a

---

[3]The defendants claimed that, within the preceding six years and in various transactions, Weston violated the NASD Rules of Fair Practice, violated various Federal and State statutes, breached its fiduciary duties to the defendants, and concealed and misrepresented certain material facts.

[4]Section 15 of the NASD code provides that no claim shall be "eligible for submission to arbitration" where six years have elapsed from the event giving rise to the claim.

[5]Also in 1996, all but four of the defendants filed a complaint in Norfolk

notice of appeal from that order. Weston then filed a motion before a single justice of this court to stay arbitration pending appeal, which was denied. Weston's appeal from the single justice's denial was consolidated with its appeal from the Superior Court judge's order compelling arbitration.

Weston argues, inter alia, that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (1994), which, in cases involving interstate commerce, permits an appeal from an order compelling arbitration,[6] preempts the Massachusetts Uniform Arbitration Act, G. L. c. 251, § 18. Section 18 does not permit such an appeal. See *Old Rochester Regional Teacher's Club* v. *Old Rochester Regional Sch. Dist.*, 18 Mass. App. Ct. 117, 118 (1984) (section 18, by failing to enumerate orders compelling arbitration as occasions for the exercise of the right of appeal, precludes an appeal from such an order); *Coughlan Constr. Co.* v. *Rockport*, 23 Mass. App. Ct. 994, 995 (1987). Whether the § 18 denial of an immediate appeal from an order compelling arbitration is preempted by the FAA appears not to have been the subject of any decision by our appellate courts.

The defendants preliminarily argue that the FAA does not preempt § 18 because the arbitration agreement in this case does not involve interstate commerce. See *Southland Corp.* v. *Keating*, 465 U.S. 1, 14-15 (1984) (the "involving commerce" requirement is a constitutionally "necessary qualification" on the FAA's reach, marking its permissible outer limit); *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U.S. 265, 277 (1995) (the FAA "applies where there is 'a contract evidencing a transaction involving commerce' "). See also *Loche* v. *Dean Witter Reynolds, Inc.*, 26 Mass. App. Ct. 296, 301-302 (1988). We need not consider whether the arbitration agreement "involves

---

Superior Court against, inter alia, Weston, alleging fraud in a 1986 transaction. The remaining four defendants filed a similar complaint in Suffolk Superior Court. In 1997, while this appeal was pending, the defendants filed an amended complaint, alleging fraud by Weston in a 1988 transaction, which was also the basis of their demand for arbitration.

[6]In 1988, Congress added § 15 to the FAA. In 1990, Congress renumbered that § 15 to § 16. Section 16(a)(3) provides that an appeal may be taken from "a final decision with respect to an arbitration that is subject to this title." Section 16(b)(3) provides that an appeal may not be taken from "an interlocutory order . . . compelling arbitration." Federal decisions regarding so-called independent proceedings (where — as here — the only issue before the court is whether arbitration is required) treat an order compelling arbitration as a "final decision." See *Apollo Computer, Inc.* v. *Berg*, 886 F.2d 469, 471-472 (1st Cir. 1989); *Thomson McKinnon Sec., Inc.* v. *Salter*, 873 F.2d 1397, 1399 (11th Cir. 1989).

interstate commerce," because we conclude that the FAA, assuming it is applicable, does not preempt § 18.

The FAA was designed "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate." *Dean Witter Reynolds, Inc.* v. *Byrd,* 470 U.S. 213, 219-220 (1985). To achieve that goal, the FAA created a body of Federal substantive law applicable in State and Federal courts, *Southland Corp.* v. *Keating,* 465 U.S. at 12; *Perry* v. *Thomas,* 482 U.S. 483, 489 (1987), which enforced "the duty to honor an agreement to arbitrate." *Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.,* 460 U.S. 1, 25 n.32 (1983). There resulted a strong Federal policy favoring arbitration, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25.

Nevertheless, the FAA does not contain any express preemptive provision, "nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 477 (1989). "[T]he federal courts' jurisdiction to enforce the Arbitration Act is concurrent with that of the [S]tate courts." *Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.,* 460 U.S. at 25. The FAA does preempt State law, however, but only "to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' *Hines* v. *Davidowitz,* 312 U.S. 52, 67 (1941)." *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. at 477.

Thus, States may ordinarily establish their own procedural rules for the arbitration process, see *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Jr. Univ., supra* at 476 ("[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate"); see also *Felder* v. *Casey,* 487 U.S. 131, 138 (1988) (it is a "general and unassailable proposition . . . that States may establish the rules of procedure governing litigation in their own courts"), but those procedural rules are preempted by the FAA if the effect of the State rule "would undermine the goals and policies of the FAA." *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Jr. Univ., supra* at 477-478.

The narrow question on this appeal, then, is whether the

Massachusetts procedural rule depriving Weston of an immediate appeal from the judge's order compelling it to arbitrate the defendants' claims before the NASD undermines the Federal goal of enforcing agreements to arbitrate in State and Federal courts. We think not.

There is no reason to suppose that the *timing* of the exercise of the right of appeal from an order compelling arbitration is other than a procedural matter which does not alter the substantive rights of either party — the right of Weston not to be bound by an illegal award, and the right of the defendants to enforce a binding agreement to arbitrate. Federal decisional authorities under § 16 of the FAA suggest strongly that this is so. See, e.g., *Pacific Reinsurance Mgmt. Corp.* v. *Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022 (9th Cir. 1991) (section 16 of the FAA, which identifies both the events from which an immediate appeal may be taken and those interlocutory orders which postpone the time for an appeal, merely "addresses remedies and procedures"); *Nichols* v. *Stapleton*, 877 F.2d 1401, 1403 (9th Cir. 1989) (section 16 of the FAA "addresses remedies and procedures"); *Campbell* v. *Dominick & Dominick, Inc.*, 872 F.2d 358, 361 (11th Cir. 1989) ("[section 16] does not affect substantive rights; only the timing of appeals is at issue").

As to the Massachusetts procedural scheme regarding arbitration, it may be said that Weston's right to challenge the legality of any arbitration award continues to be available and may be asserted in opposition to the application of the defendants to confirm any award in the defendants' favor, see G. L. c. 251, §§ 11,[7] 12,[8] and 13, and Weston may, under G. L. c. 251, § 18(*a*)(3), appeal an order of the Superior Court confirming any unfavorable award of the arbitrator. Weston's rights being fully preserved, the order compelling arbitration may be seen as being a procedural point which is not in derogation of the Federal goal of enforcing agreements to arbitrate.

A persuasive decision directly on point is *Marr* v. *Smith Barney, Harris Upham & Co.*, 116 Or. App. 517 (1992). There, the investors applied for an order compelling the defendant brokers to arbitrate before the NASD pursuant to the parties' brokerage

---

[7]Section 11 provides that, upon an application of a party, the court shall confirm an award unless grounds are asserted for vacating, modifying, or correcting an award.

[8]Section 12 provides that an award shall be vacated if, inter alia, the arbitrators exceeded their powers, or if there was "no arbitration agreement" regarding the matter in dispute.

contract. The order was granted, and the brokers appealed to the Oregon Court of Appeals. The Court of Appeals dismissed the appeal under Oregon law.

The language of the Oregon court, 116 Or. App. at 523-524, is particularly apt. "It is merely a procedural happenstance that, had the federal trial court entered the order that the state court entered, it would have been a final decision [see note 6, *supra*] insofar as whether it is appealable. . . . The object that Congress sought to achieve is simply that the aggrieved party have a right to appeal at some time. The brokers will be able to appeal the arbitrability decision when judgment is entered on the arbitration award in the [S]tate proceeding." See *Berger Farms* v. *First Interstate Bank of Or., N.A.*, 148 Or. App. 33, 37 (1997), review granted, 327 Or. 192 (1998).

We conclude that the order of the Superior Court compelling arbitration does not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Jr. Univ., supra* at 477.

For these reasons, the appeal is to be dismissed. However, the parties have extensively briefed whether a judge or an arbitrator determines the arbitrability issue, that is, whether the defendants' claims against Weston are properly the subject of arbitration before the NASD. Rather than remand the case to the Superior Court without instructions on this issue, leaving open the possibility of another appeal on an issue already addressed by the parties but not decided by this court, we express our views on the issue in the interest of judicial economy.

As a preliminary matter, it is important to recognize that the paradigm for arbitration is a clause in a commercial agreement describing the mutual obligations of the parties to arbitrate their disputes under the agreement. It may be assumed, in such a case, that the parties considered and agreed upon the wording of the clause. In that event, the question, who decides the issue of arbitrability, turns on "what the parties agreed about *that* matter" (emphasis in original). *First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 943 (1995). The point to be made is that the case before us does *not* involve a negotiated arbitration clause in a commercial agreement.

In its U-4 form, Weston unilaterally agreed to arbitrate "any dispute, claim or controversy that may arise between me and . . . a customer . . . that is required to be arbitrated" under the NASD code. We noted earlier that § 12(a) of the NASD code

requires that "[a]ny dispute, claim, or controversy . . . between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated person shall be arbitrated under this Code . . . *upon the demand of the customer*" (emphasis added). Section 35 of the NASD code provides that "[t]he arbitrators shall be empowered to interpret and *determine the applicability of all provisions under this Code . . .*" (emphasis added).

The defendants are not parties to any of the foregoing documents requiring Weston to arbitrate; the defendants are merely third party beneficiaries of Weston's promise to arbitrate — customers of Weston who have demanded arbitration. See *Choate,Hall & Stewart* v. *SCA Servs., Inc.*, 378 Mass. 535 (1979); Restatement (Second) of Contracts § 304 (1981). Thus, our task is to determine the appropriate construction to be put on § 35 of the NASD code, not to calculate the "manifestation of mutual assent" of the parties.[9] Restatement (Second) of Contracts § 17(1) (1981).

The construction of § 35 must be undertaken in the context of the manifest purpose of the NASD code — that the interests of securities dealers are best served by eschewing litigation in favor of arbitration. The importance of this policy is demonstrated by the requirement that membership in the NASD is conditioned upon the applicant's agreement to be bound by the NASD code, at the demand of a customer, in regard to all disputes with the customer.

Nevertheless, the Federal courts of appeal, applying Federal law, are divided on the interpretation of § 35. In our view, the First, Second, and Eighth Circuits have the better of the argument. In *FSC Sec. Corp.* v. *Freel*, 14 F.3d 1310 (8th Cir. 1994), the court noted that the parties had adopted the entire NASD code, "including Section 35," and held that whether or not the six-year time bar of § 15 of the NASD code, see note 4, *supra*, is a "substantive limitation on what disputes are 'eligible for submission' to the arbitrators," is for the arbitrators to decide. *Id.* at 1312. This is because § 35 "*is* a 'clear and

---

[9]*First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. at 945-950, holds that where there is a bilateral agreement to arbitrate, and there is silence or ambiguity in the agreement to arbitrate regarding the issue "who should decide arbitrability," the proponents of arbitration must show that the opponents "clearly agreed to have the arbitrators decide (i.e., to arbitrate) the question of arbitrability." Contrast *Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. at 24-25, quoted *supra* at 75.

unmistakable' expression [emphasis in original] . . . [that] section 35 commits interpretation of all provisions of the NASD [c]ode to the arbitrators." *Id.* at 1312-1313. In *PaineWebber Inc.* v. *Bybyk*, 81 F.3d 1193 (2d Cir. 1996), the court's alternative holding was that § 35 "commits all issues, including issues of arbitrability and timeliness, to the arbitrators." *Id.* at 1202. In *PaineWebber Inc.* v. *Elahi*, 87 F.3d 589 (1st Cir. 1996), the court, concluding that the applicability of the NASD code provision for a six-year time bar (§ 15) was an issue for the arbitrator, not the courts, said that the § 35 provision "empowering the arbitrator to 'interpret and determine the applicability of all provisions under this Code,' strongly undercuts any argument that the parties intended the section 15 time bar to be an arbitrability issue to be decided only by the courts." *Id.* at 601. Contrast *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Cohen*, 62 F.3d 381, 384 (11th Cir. 1995); *Cogswell* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 78 F.3d 474, 478-481 (10th Cir. 1996); *Miller* v. *Flume*, 139 F.3d 1130, 1134 (7th Cir.), cert. denied, 119 S. Ct. 74 (1998), all relying on the statement in *First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. at 944, that in construing an agreement to arbitrate — which is undertaken by applying "ordinary state-law principles that govern the formation of contracts" — the claim that the parties agreed to arbitrate the issue of arbitrability must be shown by " 'clea[r] and unmistakabl[e]' evidence that they did so."

As we observed in note 9, *supra*, *First Options* construed a bilateral agreement to arbitrate; it did *not* construe — or even mention — § 35 of the NASD code. For that reason, we decline to follow the Federal cases that rely on *First Options* in construing § 35.

The text of § 35 points directly in favor of the arbitrator deciding arbitrability in the first instance. That section empowers the arbitrators to "interpret *and* determine the applicability of all provisions under this Code. . ." (emphasis added). "Applicability" has to do with "the quality or state of being applicable." Webster's Third New Int'l. Dictionary 105 (1993). Thus, the arbitrator is empowered to determine whether the NASD code — the arbitral process — is applicable to the facts before him. Under the NASD code it is the arbitrator — not the court — who first determines whether the code can be applied to the claims asserted.[10]

---

[10]The arbitrator's award is subject to judicial review by a United States

Finally there remains an issue of waiver raised in Weston's reply brief. There, Weston argues that on June 16, 1997, Weston served its brief upon the defendants, and that subsequent to that date (i.e., on or about August 5, 1997), the defendants filed an amended complaint against Weston in the Norfolk Superior Court setting forth, for the first time, the same claims as appear in the NASD arbitration proceedings.[11] On November 19, 1997, Weston filed its reply brief arguing, inter alia, that the defendants had waived their right to proceed with their claim to NASD arbitration. The defendants responded by moving to strike that portion of Weston's brief dealing with the alleged waiver. See *Assessors of Boston* v. *Ogden Suffolk Downs, Inc.*, 398 Mass. 604, 608 n.3 (1986) ("Any issue raised for the first time in an appellant's reply brief comes too late, and we do not consider it"). Since the defendants' amended complaint was filed *after* Weston filed its original brief, the defendants' motion to strike must be denied. Such are the bare bones of the waiver controversy.

A party may waive the right to arbitrate an arbitrable issue. See *Martin* v. *Norwood*, 395 Mass. 159, 162 (1985); *Home Gas Corp. of Mass., Inc.* v. *Walter's of Hadley, Inc.*, 403 Mass. 772, 775 (1989). Under both Federal and Massachusetts law, "[t]he essential question is whether, under the totality of the circumstances, the defaulting party acted 'inconsistently' with the arbitration right." *Martin* v. *Norwood*, 395 Mass. at 162, quoting from *Dickinson* v. *Heinold Sec.*, 661 F.2d 638, 641 (7th Cir. 1981) (Federal law). *Home Gas Corp. of Mass., Inc.* v. *Walter's of Hadley, Inc.*, 403 Mass. at 775 (Massachusetts law).

Under Massachusetts law — that is to say, in cases where interstate commerce is not involved — the issue of waiver is ordinarily for the court to determine, not the arbitrator. See *Home Gas Corp. of Mass., Inc.* v. *Walter's of Hadley, Inc., supra* at 774. Certainly this is so where the party demanding arbitration has previously litigated his case, lost, and then demanded arbritation. *Id.* at 778.[12]

District Court (assuming the matters at issue involve interstate commerce) under the circumstances described in 9 U.S.C. § 10 (award may be set aside, inter alia, if the arbitrator exceeded his powers). See *First Options*, 514 U.S. at 942-943. When there is no involvement of interstate commerce, see the similar provisions for judicial review in G. L. c. 251, §§ 12 & 13.

[11]See note 5, *infra*.

[12]See *O'Brien* v. *Hanover Ins. Co.*, 427 Mass. 194 (1998) (observing, at n.5, regarding the content of the waiver issue, the material difference between

In the case before us, where we continue to consider the case, as the plaintiffs argue, on the basis that this controversy involves interstate commerce, it is the applicable Federal law which determines whether arbitration has been waived. *Martin* v. *Norwood*, 395 Mass. at 162.[13] *Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. at 24-25, states the Federal rule: "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the language at hand is the construction of contract language itself *or an allegation of waiver, delay, or a like defense to arbitrability.*" (Emphasis added.)

This is not a case in which the defendants have actively litigated and only later demanded arbitration. Here, the defendants have been pursuing their arbitration claim since June, 1994, and their action was not filed until three years after their demand for arbitration. Recently, a Federal court, distinguishing cases in which the party demanding arbitration had actively participated in litigation prior to the demand, made it clear that "ordinarily a defense of waiver . . . is a matter to be decided by the arbitrator." See *S & R Co. of Kingston* v. *Latona Trucking, Inc.*, 159 F.3d 80, 82-83 (2d Cir. 1998).

Our conclusion that the waiver issue should be determined by the arbitrator is reinforced by § 35 which, as we have seen, empowers the arbitrator to decide whether the NASD code is applicable to the facts before him — the core issue of arbitrability — and § 35 assigns initial responsibilty for that determination to the arbitrator. This was the commitment of Weston, accepted by its customers.[14]

The plaintiffs' appeal from the order compelling arbitration is dismissed. For the reasons already expressed in this opinion, the plaintiffs' appeal from the single justice order denying the motion for a stay of arbitration is affirmed.

*So ordered.*

litigation commenced before arbitration and litigation commenced after arbitration).

[13]*Martin*, discussing Federal law, states that the judge was required to determine the waiver issue. It does not appear that the party demanding arbitration in *Martin* argued that the arbitrator should decide this issue. This is understandable since that party had previously withdrawn its motion to stay proceedings and its motion for an order compelling arbitration.

[14]*Rosenberg* v. *Merrill Lynch, Pierce, Fenner & Smith*, 163 F.3d 53, 71 (1st Cir. 1998), cited by the plaintiffs in their petition for rehearing, has no bearing on this case. See *id.* at n.15 and related text.