MASSACHUSETTS HIGHWAY DEPARTMENT & another[1] *vs.*
PERINI CORPORATION & others.[2]

No. 11-P-1666.

Suffolk. May 4, 2012. - January 17, 2013.

Present: GRAHAM, KATZMANN, & CARHART, JJ.

*Arbitration,* Award, Vacating award, Arbitrable question, Authority of arbitrator.
*Judicial Estoppel. Estoppel.*

In a civil action challenging arbitration awards, a Superior Court judge properly
    granted summary judgment in favor of the plaintiffs, the public agencies
    overseeing the Central Artery/Tunnel Project, where the language of the
    agreement at issue did not contain language indicating that the parties had
    agreed to allow a disputes review board (board) make binding determina-
    tions as to the arbitrability of claims, and the conduct of the parties did not
    provide the requisite clear and unmistakable evidence of their intent that
    the board conduct binding arbitration on the arbitrability of claims before
    it; further, the plaintiffs' participation in proceedings before the board did
    not constitute a waiver of its right to review. [100-103]
In a civil action challenging arbitration awards, a Superior Court properly
    concluded that disputes concerning arbitrability were to be decided under the
    dispute resolution provisions of a 1995 contract between the parties [103-105],
    and that the plaintiffs, the public agencies overseeing the Central Artery/
    Tunnel Project, neither waived their right to assert that such disputes should
    be decided under that contract, nor were judicially estopped from doing so
    [105-106]; further, the judge properly vacated the awards in their entirety
    [106-108].

CIVIL ACTIONS commenced in the Superior Court Department
on November 28, 2008; December 17, 2008; and February 24,
2009, respectively.

After consolidation, the cases were heard by *Margaret R.
Hinkle,* J., on motions for summary judgment, and motions for
clarification and reconsideration were heard by *Peter M. Lauriat,*
J.

[1]Massachusetts Turnpike Authority.
[2]Kiewit Construction Co., Inc., and Jay Cashman, Inc.

*J. Owen Todd* & *Joel Lewin* for the defendants.

*Randall F. Hafer*, of Georgia, & *James A. Sweeney*, Assistant Attorney General (*Francis R. Powell*, Special Assistant Attorney General, with him) for the plaintiffs.

GRAHAM, J. The defendants, Perini Corporation, Kiewit Construction Co., Inc., and Jay Cashman, Inc. (collectively, PKC), doing business as Perini-Kiewit-Cashman Joint Venture, appeal from a Superior Court order vacating arbitral awards in PKC's favor and from orders on PKC's subsequent motions for clarification and reconsideration. See G. L. c. 251, § 18. The awards were made pursuant to a 1999 agreement between PKC and the plaintiffs, the public agencies overseeing the Central Artery/Tunnel Project (collectively, CA/T). The 1999 agreement provided that the parties submit a specific group of PKC's claims against CA/T, arising from PKC's work as a general contractor on the project, to binding arbitration before a disputes review board (DRB). Those claims were listed in exhibit 1 to the 1999 agreement and were related to events occurring prior to January 1, 1999.

In addition to the claims specifically listed in exhibit 1, PKC submitted other claims to the DRB, some of which PKC alleged were related to the exhibit 1 claims and subject to binding arbitration. The DRB issued binding determinations as to which of the submitted claims were subject to binding arbitration, assessed the merits of the claims, and issued awards.

CA/T brought suit in the Superior Court to vacate or modify the awards.[3] On cross motions for summary judgment, a judge allowed CA/T's motion, concluding that the court was required to vacate the awards because the DRB had exceeded its authority under the 1999 agreement when it decided which of the claims before it were arbitrable. In response, PKC filed motions for clarification and reconsideration. A second judge, acting on those motions, concluded that the awards were to be vacated in their entirety, that disputes concerning arbitrability were to be decided under the dispute resolution provisions of a 1995 contract between the parties, and that CA/T neither waived nor was judicially estopped from contesting the DRB's authority to make binding determinations as to arbitrability.

---

[3] CA/T filed three separate complaints, which the court consolidated.

On appeal, PKC challenges these rulings and requests that the lower court orders be vacated and that summary judgment be entered in PKC's favor. We affirm the orders and remand for further proceedings.

1. *Background.* We summarize the undisputed facts. Pursuant to a 1995 contract,[4] PKC served as one of the general contractors for portions of the Central Artery/Tunnel Project (project). Division 1, subsection 7.16 (subsection 7.16), of the 1995 contract set forth a process for the resolution of disputes between PKC and CA/T, arising out of, or relating to, that contract, the contract documents, or the work. Disputes were to be presented to a three-member DRB, which would issue findings and nonbinding recommendations for submission to the project director.[5] The project director, in turn, could accept the DRB's nonbinding recommendations, revise them, or reject them. The project director's decisions could be appealed to the board of commissioners of the Massachusetts Highway Department or to the Superior Court, pursuant to G. L. c. 30, § 39J.

As work on the project progressed, hundreds of disputes arose involving additional costs incurred by PKC as a result of delays and problems with construction. In an effort to resolve those disputes more expediently, the parties entered into an agreement in 1999 (1999 agreement), which served to "supersede and/or supplement, where appropriate, the dispute resolution process set out in . . . [s]ubsection 7.16" of the 1995 contract, and whereby the parties agreed to binding arbitration by the DRB on all claims that arose before January 1, 1999, as specifically enumerated in exhibit 1.

As a result of the interplay between the 1999 agreement and subsection 7.16 of the 1995 contract, the DRB functioned in a hybrid manner, simultaneously adjudicating both exhibit 1 claims and other claims between the parties. Because of that arrange-

[4]The 1995 contract, entitled Public Construction Contract No. C11A1, covered construction of a portion of the tunnel on Interstate Highway 93 in Boston, as well as work involving certain subway lines within the city.

[5]The dispute resolution procedure of the 1995 contract is described in greater detail in *Massachusetts Hy. Dept.* v. *Perini Corp.*, 444 Mass. 366, 367-368 (2005).

ment, the DRB issued both nonbinding recommendations and binding awards.[6]

In the present dispute, PKC submitted exhibit 1 claims, along with other claims that it characterized as related to the exhibit 1 claims, to the DRB for binding arbitration. CA/T countered that those additional claims were not subject to binding arbitration under the 1999 agreement, and that any claims not listed in exhibit 1 were subject to nonbinding resolution by the DRB. As that process unfolded, PKC sent letters to CA/T requesting clarification of its position on the DRB's authority to decide disputes over arbitrability, to which CA/T did not respond. In prior dispute resolution proceedings before earlier DRB panels, CA/T had maintained that disputes between the parties over arbitrability should be decided by the courts. In a June, 2007, electronic mail message to the parties, the DRB chairman explained that the DRB would decide all issues put before it by either recommendation or binding award, and that, while the parties could expressly agree that the arbitrators decide arbitrability, he was not aware whether the parties had such an express agreement. At the hearings before the DRB on the merits of the claims, CA/T continued to argue that claims not listed in exhibit 1 were not subject to binding arbitration under the 1999 agreement, but did not specifically contest the DRB's authority to decide arbitrability.

The DRB issued decisions identifying which claims were within its jurisdiction as a binding arbitral panel and deemed those decisions binding. The DRB awarded PKC the amount of $56,535,035, of which $44,429,716 was designated as binding awards, and $12,105,319 designated as recommendations.

CA/T appealed the DRB's awards to the Superior Court, arguing that CA/T never agreed to binding arbitration on the issue of arbitrability. On cross motions for summary judgment, a judge allowed CA/T's motion, concluding that the DRB had exceeded its authority when it made binding determinations as to which claims before it were arbitrable under the 1999 agreement. PKC filed motions for clarification and for reconsidera-

---

[6]The composition of the DRB's three-member panel has changed a number of times. The DRB panel involved here was the third DRB panel since the 1999 agreement was executed.

tion before a second judge,[7] arguing that the awards need not be vacated in their entirety and that CA/T had waived or was estopped from contesting the validity of the DRB's decisions regarding arbitrability. The judge rejected those arguments and concluded that in accordance with subsection 7.16 of the 1995 contract, the parties were free to present their disputes concerning the arbitrability of PKC's various claims to the DRB for nonbinding recommendations. Under subsection 7.16, the judge reasoned, the DRB's nonbinding recommendations as to arbitrability would be submitted to the project director, who would render a final decision that was appealable to the Massachusetts Highway Department's board of commissioners or to the Superior Court.

2. *Discussion.* Our review of summary judgment is de novo. See *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007) ("We review a grant of summary judgment de novo, construing all facts in favor of the nonmoving party").

a. *Whether the parties agreed to arbitrate arbitrability.* PKC maintains that, in entering into the 1999 agreement, the parties agreed to have the DRB make binding determinations as to the arbitrability of the claims.[8] PKC asserts that the language of the 1999 agreement, read in accord with the parties' intentions and in the context of their ongoing business relationship, provides the requisite evidence that they agreed to binding arbitration on disputes as to arbitrability. We disagree.

The United States Supreme Court set out the standard in *First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 944 (1995) (*First Options*), and we apply it here. See *Weston Sec. Corp.* v. *Aykanian*, 46 Mass. App. Ct. 72, 78-79 (1998). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options, supra,* quoting from *AT&T Technologies, Inc.* v. *Communications Wkrs. of Am.,* 475 U.S. 643, 649

---

[7]The first Superior Court judge retired shortly after deciding the parties' cross motions for summary judgment.

[8]If the parties agreed to binding arbitration on disputes over arbitrability, CA/T would be entitled only to the highly limited review prescribed by G. L. c. 251, § 12. See *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.,* 363 Mass. 386, 390-391 (1973).

(1986) (*AT&T Technologies*). Because we require clear and unmistakable evidence in determining whether the parties agreed on who should decide arbitrability, "the law treats silence or ambiguity about the question . . . differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement.' " *First Options, supra* at 944-945. In this respect, the usual presumption in favor of arbitration is reversed. See, e.g., *Falmouth Police Superior Officers Assn.* v. *Falmouth*, 80 Mass. App. Ct. 833, 838-839 (2011), quoting from *AT&T Technologies, supra* at 650 ("where the contract contains an arbitration clause, there is a presumption of arbitrability"). Thus a party's silence or ambiguity in regard to who decides arbitrability does not create a presumption that that issue is subject to arbitration.[9]

Nowhere in the 1999 agreement is there language indicating that the DRB should act as a binding arbitrator on disputes between the parties over arbitrability, and PKC concedes as much. Indeed, the agreement never specifically addresses arbitrability at all. Nor does the broad language empowering the DRB to issue binding awards on all disputes pertaining to the exhibit 1 claims suffice to establish its authority to decide issues of arbitrability under the stringent requirements of *First Options, supra* at 944.

Despite the absence of such language in the 1999 agreement, PKC urges us to consider the parties' course of conduct as providing the requisite clear and unmistakable evidence of their intent that the DRB conduct binding arbitration on the arbitrability of the claims before it. Assuming, without in any way deciding, that course of conduct alone could satisfy the clear and unmistakable evidence standard,[10] the evidence of the parties' conduct in the summary judgment record does not satisfy

---

[9]As the Supreme Court explained: "[G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options, supra* at 945.

[10]In *Weston Sec. Corp.*, 46 Mass. App. Ct. at 78, this court underscored the

PKC's burden. Under the directive of *First Options*, 514 U.S. at 944, we will not construe CA/T's silence, vagueness, or unresponsiveness regarding the issue of the DRB's authority to make binding decisions on arbitrability as constituting clear and unmistakable evidence of such intent.[11]

Along similar lines, PKC posits that because CA/T went through the arbitration process without contesting the DRB's authority to arbitrate arbitrability, CA/T waived its right to judicial review on the issue. But CA/T was consistent in asserting that the DRB's authority to make binding determinations was limited to deciding the claims listed in exhibit 1, and that disputes not listed in exhibit 1 still could be decided by the DRB, but only as nonbinding recommendations. See, e.g., *id.* at 946 (party that objected to arbitrator deciding parties' dispute evinced lack of willingness to be bound by arbitrator's decision on arbitrability of that dispute). Contrast *American Fedn. of State, County, & Mun. Employees, Council 93, AFL-CIO* v. *School Dept. of Burlington*, 462 Mass. 1009, 1010 (2012) (waiver found where union failed to object to arbitrability of grievance and to arbitrator's authority to decide arbitrability).

In this regard, we are mindful, as the Superior Court judge aptly observed in her December 23, 2010, memorandum and order on summary judgment, that the DRB functioned as a hybrid board, with the authority to make binding determinations as to the exhibit 1 claims and nonbinding recommendations as to the claims not listed in exhibit 1. We concur with the judge's analysis that, "under the [1999] Agreement, [the DRB's] authority to make binding arbitral awards and orders was limited to disputes concerning the claims listed on Exhibit 1, and it is undisputed that the CA/T . . . consistently so argued."

PKC cites a number of Federal cases for the proposition that

---

importance of recognizing "that the paradigm for arbitration is a clause in a commercial agreement describing the mutual obligations of the parties," including the question who decides arbitrability. See *Marie* v. *Allied Home Mort. Corp.*, 402 F.3d 1, 14 (1st Cir. 2005) (for issue of arbitrability to be decided by an arbitrator, there must be clear and unmistakable evidence of the parties' intent in the arbitration agreement).

[11]While PKC urges that the standard rewards evasive conduct and unfairly permits CA/T a second bite of the apple, we note from the record and from the history of litigation between the parties that PKC is a sophisticated entity, is represented by able counsel, and could have taken measures to protect itself.

a party, by participating in arbitration without objecting to the arbitrator's authority to decide arbitrability, waives the right to contest that authority on review.[12] But the circumstances here are far different. Waiver cannot be implied from CA/T's participation before the DRB, as the DRB proceedings involved PKC's simultaneous presentation of claims listed in exhibit 1 that fell within the 1999 binding arbitration agreement, and claims that were subject to the nonbinding dispute resolution process of the 1995 contract. And again, CA/T consistently objected to the DRB's authority to make binding decisions on anything other than the claims listed in exhibit 1. Given the dual functions of the DRB in the proceedings, we decline to construe CA/T's silence or ambiguity regarding the DRB's role in deciding arbitrability as a waiver of its right to review.[13]

b. *Who decides arbitrability.* PKC maintains that, should we conclude that the DRB lacked authority to make binding determinations as to arbitrability, then it is for the Superior Court judge to decide which of PKC's claims are subject to binding arbitration under the 1999 agreement.

It is true, as PKC points out, that questions of arbitrability generally are for the courts. See *AT&T Technologies,* 475 U.S. at 649. See also *Massachusetts Hy. Dept.* v. *Perini Corp.,* 444 Mass. 366, 374 (2005); *Sheriff of Suffolk County* v. *AFSCME Council*

---

[12]See, e.g., *PowerAgent Inc.* v. *Electronic Data Sys. Corp.,* 358 F.3d 1187, 1192-1193 (9th Cir. 2004) (party that sought arbitrator's decision on arbitrability waived challenge to arbitrator's authority on appeal); *Cleveland Elec. Illuminating Co.* v. *Utility Wkrs. Union of Am., Local 270,* 440 F.3d 809, 813 (6th Cir. 2006) (party waived issue whether court or arbitrator had authority to decide arbitrability of union grievance where that party participated in arbitration, arguing that grievance was not arbitrable, and raised issue of who had authority to determine arbitrability for first time on appeal); *Halcot Nav. Ltd. Partnership* v. *Stolt-Nielsen Transp. Group,* 491 F. Supp. 2d 413, 419 (S.D. N.Y. 2007) (objection to arbitrability of claim not sufficient to preserve objection to arbitrator's authority to decide arbitrability); *Walnut St. Sec., Inc.* v. *Lisk,* 497 F. Supp. 2d 714, 723 (M.D.N.C. 2007) (party waived right to have court decide arbitrability where party did not object to arbitrator's jurisdiction or authority to decide arbitrability).

[13]PKC pointed out at oral argument that to proceed with the dispute resolution process, the DRB had to make an initial determination regarding arbitrability. But the question is whether the DRB's determination on that issue was binding.

*93, Local 419*, 75 Mass. App. Ct. 340, 343 (2009); *Falmouth Police Superior Officers Assn.*, 80 Mass. App. Ct. at 838.

But here, when the parties entered into the 1995 contract, they agreed to a dispute resolution process that was expressly made a condition precedent to the commencement of a court action. Subsection 7.16 of that contract states that the parties agree to resolve PKC's claims, seeking "relief in any form arising out of or relating to this Contract," pursuant to the dispute resolution process set forth therein. We understand subsection 7.16, when read together with the 1999 agreement, to mean that binding arbitration is limited to the claims listed in exhibit 1, while all other claims arising out of or relating to the 1995 contract are to be put to the DRB for nonbinding recommendations.[14] See generally *NStar Elec. Co.* v. *Department of Pub. Util.*, 462 Mass. 381, 394 (2012) (courts consider contract language in light of "the contract as a whole, in a reasonable and practical way"); *USM Corp.* v. *Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. 108, 116 (1989) (court must "construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose"). And we think the latter includes disputes as to arbitrability.

PKC complains that a broad reading of subsection 7.16, which would encompass disputes as to arbitrability, is inconsistent with our narrow interpretation of the 1999 agreement, which itself employs similar language encompassing "all disputes concerning" the claims listed in exhibit 1. The argument ignores the well-settled principles of contract interpretation that we apply in these circumstances. With respect to the 1999 agreement, which is an agreement for binding arbitration, we require clear

---

[14]We reject PKC's insistence at oral argument that the 1999 agreement superseded the 1995 contract with respect to dispute resolution. The 1999 agreement expressly states that it is intended to "supersede and/or supplement, where appropriate, the dispute resolution process set out in Division 1, subsection 7.16" of the 1995 contract. Plainly, binding arbitration was intended to replace the dispute resolution process of subsection 7.16 only with respect to the claims listed in exhibit 1. See, e.g., *School Comm. of Hanover* v. *Hanover Teachers Assn.*, 435 Mass. 736, 740 (2002) (arbitrator's award must be drawn from the arbitration agreement in its entirety, and not just a single provision). See generally *Starr* v. *Fordham*, 420 Mass. 178, 190 (1995) (contract terms are not to be read in isolation but in accordance with context); *Rubin* v. *Murray*, 79 Mass. App. Ct. 64, 76 (2011) (same).

and unmistakable evidence of intent to arbitrate arbitrability, as previously explained. See, e.g., *First Options*, 514 U.S. at 944. By contrast, subsection 7.16, which is not an agreement for binding arbitration, does not require clear and unmistakable evidence of intent. Instead, we apply general principles of contract interpretation to the 1995 contract and its dispute resolution provisions. See, e.g., *ibid.* (ordinary State law principles of contract apply to deciding whether parties agreed to arbitrate a certain matter, while clear and unmistakable standard applies to deciding whether parties agreed to arbitrability). Accordingly, there is no incongruity in our conclusion that the 1999 agreement does not include an agreement to resolve the issue of arbitrability, while the 1995 contract does.

We conclude that PKC was required to pursue the issue of arbitrability before the DRB for its nonbinding recommendation, with a final decision to be rendered by the project director, in accordance with the dispute resolution process set forth in subsection 7.16 and, as therein provided, subject to administrative or judicial review, in accordance with G. L. c. 30, § 39J.

c. *Whether CA/T waived or is estopped from asserting that subsection 7.16 applies to arbitrability.* PKC contends that, throughout the DRB proceedings, as well as in proceedings before prior DRB panels, CA/T failed to assert that the issue of arbitrability should be decided under subsection 7.16, and that CA/T therefore waived any right to a decision on the issue in accordance with the subsection 7.16 process. But again, CA/T consistently maintained, with respect to the claims involved here, that the DRB's authority to make binding decisions was limited to the exhibit 1 claims, and that all disputes not listed in exhibit 1 were to be decided by the DRB in its nonbinding capacity. We do not view that position as a waiver of CA/T's right to have arbitrability decided by the DRB in its nonbinding capacity under subsection 7.16.

PKC also asserts that CA/T's purportedly inconsistent positions implicate the doctrine of judicial estoppel, in that by previously arguing, in certain position papers to the DRB, that jurisdictional issues were not a claim or dispute as defined in subsection 7.16, CA/T is estopped from now arguing that arbitrability should be decided pursuant to the nonbinding dispute

process set out in subsection 7.16. Judicial estoppel is comprised of two fundamental elements: (1) the position being asserted must be directly inconsistent with that taken in a prior proceeding, and (2) the party must have persuaded the court in the earlier proceeding to accept its prior position. *Otis* v. *Arbella Mut. Ins. Co.*, 443 Mass. 634, 640-641 (2005). Even were we to assume that the doctrine of judicial estoppel may be invoked in connection with arbitration proceedings, the argument fails, if for no other reason than that CA/T did not succeed in persuading the DRB or a court to accept its earlier position. Thus, "the perception that either the first or the second court was misled" is not a concern here.[15] *Id.* at 641.

d. *Whether the awards should be vacated in their entirety.* Lastly, PKC claims that the Superior Court judge erred in ordering the awards vacated in their entirety. PKC argues that the portions of the awards that concern the exhibit 1 claims may be severed and enforced separately from the portion that concern claims related to, but not listed in, exhibit 1.

General Laws c. 251, § 12(*a*)(3), mandates that an award be vacated if the arbitrators exceeded their powers. We may, however, sever and enforce the remainder of an award where doing so would not do an injustice and where there is no practical difficulty in managing the modified award. See *Watertown Firefighters, Local 1347, I.A.F.F., AFL-CIO* v. *Watertown*, 376 Mass. 706, 717 (1978). On the other hand, we will vacate the entire award (1) where, "because of a functional relationship between the legal and illegal parts[,] . . . [the] execution of one without the other would produce an untoward or unworkable result"; or (2) "where it can be seen that the arbitrator's decision as to the legal part was influenced by his disposition of the part later found to be illegal." *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Authy.*, 392 Mass. 407, 417-418 (1984), quoting from *Marlborough Firefighters, Local 1714* v. *Marlborough*, 375 Mass. 593, 597-598 (1978).[16]

---

[15]The same holds true for PKC's related argument that by seeking judicial review of arbitrability determinations made by earlier DRB panels in prior proceedings, CA/T is estopped from arguing in this case that arbitrability should be decided pursuant to subsection 7.16.

[16]To the extent that PKC argues vacatur would require the parties to waste further time relitigating the matter, we note that "the basic objective in this area

Severing the awards is not appropriate in this case. Most of the claims PKC presented to the DRB arose out of and were related to the same problems with and delays to construction, and PKC simultaneously presented a mix of those claims to the DRB. CA/T argues that the DRB, having determined that the majority of PKC's claims were subject to binding arbitration, made awards in amounts that were not allocated between the exhibit 1 claims and the related claims, and PKC has not persuaded us otherwise.[17] The only reasonable resolution was to vacate the awards in their entirety. There was no error.

3. *Conclusion.* We conclude that the 1999 agreement did not give the DRB the authority to issue binding awards as to the arbitrability of the disputes between the parties. We further conclude that the issue of arbitrability is to be resolved in accordance with the 1995 contract's dispute resolution process, set out in subsection 7.16, and that there was no error in vacating the awards in their entirety.[18]

___

is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes, but to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms and according to the intentions of the parties." *First Options,* 514 U.S. at 947 (citations and quotations omitted).

[17]Contrast *Shank/Balfour Beatty* v. *International Bhd. of Elec. Wkrs. Local 99,* 497 F.3d 83, 93 (1st Cir. 2007) (remedial aspect of award not vacated where arbitrator exceeded his authority in deciding, albeit correctly, that union grievance was arbitrable, as "[t]hat would lead to the senseless and inefficient result of sending the matter back to the arbitrator to redo the arbitration he had just done properly"). In other out-of-State cases cited by PKC, the parties challenging the awards were not seeking to vacate the awards in their entirety. See, e.g., *Katz* v. *Feinberg,* 167 F. Supp. 2d 556, 562 (S.D.N.Y. 2001), aff'd, 290 F.3d 95 (2d Cir. 2002); *Burlington Resources Oil & Gas Co.* v. *San Juan Basin Royalty Trust,* 249 S.W.3d 34, 36 (Tex. App. 2007).

[18]The question remains whether, under subsection 7.16, the parties must return to the DRB for nonbinding recommendations concerning the arbitrability of the claims. According to the record, the project director treated the DRB's binding decisions regarding arbitrability as nonbinding recommendations under subsection 7.16, and he reviewed and decided the issues of arbitrability and the merits of the claims in two decisions, dated December 17, 2008, and April 22, 2009. At oral argument, the parties stated that PKC appealed the project director's decisions to the Superior Court, as subsection 7.16 provides. Hence, the parties may not be required to return to the DRB to start anew on questions of arbitrability as well as the merits. Rather, the parties simply might be able to address, in the Superior Court, the issue whether the project director acted within his authority in treating the DRB's binding decisions on arbitrability as a nonbinding recommendations, and in rendering his final decisions on that basis.

The order (dated December 23, 2010, and docketed December 27, 2010) on the cross motions for summary judgment is affirmed. The order (dated March 7, 2011, and docketed March 8, 2011) on the motion for clarification is affirmed. The order (dated June 2, 2011, and docketed June 3, 2011) on the motion for reconsideration is affirmed. The matter is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*