**POWERAGENT INC., a California corporation, Plaintiff–Appellant,**

v.

**ELECTRONIC DATA SYSTEMS CORPORATION, a Delaware corporation, Defendant–Appellee.**

No. 02–17022.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 2003.

Filed Feb. 25, 2004.

Andrew W. Hayes, Boies, Schiller & Flexner, LLP, Armonk, NY, for the plaintiff-appellant.

James G. Gilliland, Jr., Townsend and Townsend and Crew, LLP, San Francisco, CA, for the defendant-appellee.

Before LEAVY, PAEZ, and BERZON, Circuit Judges.

## OPINION

BERZON, Circuit Judge:

PowerAgent Inc. ("PowerAgent") appeals the district court's orders striking its Amended Complaint and confirming an arbitration award in favor of Electronic Data Systems Corp. ("EDS"). Because PowerAgent itself argued that the arbitration panel should independently determine the arbitrability of all its claims and fails to provide a sufficient basis to vacate the arbitration award, we affirm.

## I

PowerAgent's initial complaint in district court alleged that EDS breached several interrelated contracts—a Services Agreement and two investment agreements—and committed RICO violations. The Services Agreement between PowerAgent and EDS contained the following arbitration clause:

> Any dispute, controversy or claim arising under, out of, in connection with or in relation to this Agreement, or the breach, termination, validity or enforceability of any provision of this Agreement, will be settled by final and binding arbitration conducted in accordance with and subject to the Commercial Arbitration Rules of the American Arbitration Association then applicable (the "Rules"). Unless otherwise mutually agreed upon by the parties, the arbitration hearings will be held (i) in Plano, Texas if the claim is brought by PowerAgent, or (ii) in San Diego, CA if the claim is brought by EDS. A panel of three arbitrators will be selected in accordance with the Rules, and the arbitrators will allow such discovery as is appropriate, consistent with the purposes of arbitration in accomplishing fair, speedy and cost effective resolution of disputes. The arbitrators will reference the rules of evidence of the Federal Rules of Civil Procedure then in effect in setting the scope of discovery. Judgment upon the award rendered in any such arbitration may be entered in any court having jurisdiction thereof, or application may be made to such court for a judicial acceptance of the award and an enforcement, as the law of such jurisdiction may require or allow.

Pursuant to that agreement, EDS filed a motion to dismiss or stay the complaint and compel arbitration. The district court found that, consistent with the initial complaint, the contracts were interrelated, and that the claims in the complaint were subject to the arbitration agreement.

After the district court found that the claims in PowerAgent's first complaint were subject to arbitration, PowerAgent amended its complaint to: (1) focus on an additional, later, oral agreement, concerning further investments, that contained no arbitration clause; (2) drop its RICO claim; and (3) omit any reference to the interrelationship it had previously asserted between the service agreements and the investment agreements. The district court granted EDS's motion to strike the Amended Complaint on the ground that, among other reasons, a plaintiff should not be allowed to contradict allegations in a prior complaint to avoid arbitration.

Following the determination of arbitrability and the decision to strike the Amended Complaint, PowerAgent petitioned this court for a writ of mandamus directing the district court to (1) vacate its order striking the Amended Complaint; (2) determine whether the claims in the Amended Complaint are arbitrable; and (3) retain jurisdiction over the non-arbitrable claims. *See PowerAgent, Inc. v. United States Dist. Court for the N. Dist. of Cal.*, 210 F.3d 385, 2000 WL 32073, at *1 (9th Cir. Jan.14, 2000). This court denied the petition, stating:

> If a plaintiff could drop factual allegations in an amended complaint to circumvent a previously issued order compelling arbitration, every order compelling arbitration would become merely provisional, subject to a plaintiff's "right" to amend to defeat the order. Here, the district court relied on facts asserted by the petitioner in reaching its decision to stay the case and compel arbitration. Once the district court reached that decision, the petitioner was not free to retract those assertions in an effort to avoid arbitration.

*Id.* at *2 (citations omitted).

After this court denied the petition, PowerAgent filed a Notice of Arbitration with the American Arbitration Association regarding the claims in the Complaint and the Amended Complaint. PowerAgent asserted that the arbitration panel, not the district court, should determine arbitrability and asked the arbitrators independently to address whether all their claims were arbitrable. Specifically, PowerAgent argued:

> [T]he parties agreed to give the tribunal the power to rule on its own jurisdiction, "including any objections with respect to the existence, *scope* or validity of the arbitration agreement" (emphasis added). The district court was obligat-

ed to honor the parties' clearly expressed intent. Thus the district court's Stay Order was just that—an order staying litigation pending a decision from the tribunal, pursuant to the tribunal's rules.

After briefing and oral argument, the arbitrators unanimously determined that all the claims in the dispute, including the claims added in the Amended Complaint, were subject to the arbitration clause. In the Order Regarding Jurisdiction, the arbitrators stated:

> Even if this arbitration panel were not bound by the prior orders of the District Court and the Appellate Court, we conclude that the disputes in this action are subject to arbitration.... [W]e find those purported subsequent oral contracts to be interrelated to each other and to the three written contracts referred to by the District Court in the First District Court Order, and to be a part of the same ongoing transaction or series of transactions, and to therefore be subject to arbitration....

Following extensive proceedings, the arbitration panel found in favor of EDS on the merits of all the disputes.

PowerAgent moved to vacate the arbitration award and EDS cross-moved to confirm the award. The district court confirmed the award, finding that "[a]ll decisions made by the Arbitrators, including their findings on arbitrability, waiver, and the merits, were within their authority and in no instance constituted a manifest disregard of the law."

## II

The law of the case does not preclude PowerAgent from challenging the statement in this court's mandamus decision that a plaintiff may not drop factual allegations in an effort to avoid arbitration. A denial of a petition for mandamus usual-

ly does not constitute the law of the case, because of the special limitations on granting such a writ. *Kirshner v. Uniden Corp. of Am.,* 842 F.2d 1074, 1078–79 (9th Cir. 1988) (citations omitted). Only when the decision to deny the writ was on the merits does the law of the case doctrine apply to mandamus actions. *See id.* Where the denial is or may be the result of the special limitations applying to the writ, the second panel is not bound by the earlier decision and thus need not speculate as to whether the decision was on the merits. *See id.*

In this case, the previous panel did address the merits of PowerAgent's argument, but only in the context of the special limitations on granting an extraordinary writ. *See PowerAgent,* 210 F.3d 385, 2000 WL 32073 at *1 (noting that mandamus is a drastic and extraordinary remedy and concluding that PowerAgent failed to meet the particular factors including clear error). Such emphasis on the special limitations of mandamus precludes applying the law of the case doctrine in this instance. *See Kirshner,* 842 F.2d at 1078–79. Thus, this panel is not bound by the reasoning of the previous panel as we review the district court's order confirming the arbitration award.

## III

We nonetheless conclude, without reaching the question whether the district court should have allowed the filing of the Amended Complaint in the first instance, that PowerAgent is now bound by the arbitrators' decision that this entire dispute—encompassing both the original and the Amended Complaint—was arbitrable.

Arbitrability is ordinarily for courts, not arbitrators, to decide unless the parties agree otherwise. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakeabl[e]' evidence that they did so." *First Options v. Kaplan,* 514 U.S.

938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (*citing AT & T Techs. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). Where parties *do* agree to arbitrate the issue of arbitrability, courts give the arbitrators' conclusion regarding arbitrability the same respect otherwise accorded arbitrators' decisions. *Id.* at 943, 115 S.Ct. 1920.

Here, as will appear, neither paradigm quite fits. Whether or not the parties agreed with one another to arbitrate the arbitrability issue, PowerAgent affirmatively submitted the issue to the arbitrators and urged that they had power to decide it. The question we face is whether PowerAgent, dissatisfied with the answer to the question it insisted the arbitrators could and should decide, can now ask us to determine that the arbitrators in fact lacked authority to determine the arbitrability question.

Contrary to PowerAgent's submission, *First Options* does not resolve the question before us. In *First Options,* the *defendants* in arbitration filed with the arbitrators a memorandum opposing the arbitrators' jurisdiction. *Id.* at 946, 115 S.Ct. 1920. The Supreme Court concluded that that submission did not signify an agreement to submit the question of arbitrability to the arbitrator:

> On the record before us, First Options cannot show that the Kaplans clearly agreed to have the arbitrators decide (*i.e.,* to arbitrate) the question of arbitrability. First Options relies on the Kaplans' filing with the arbitrators a written memorandum objecting to the arbitrators' jurisdiction. But merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.,* a willingness to be effectively bound by the arbitrator's decision on that point. To the contrary, insofar as the Kaplans

were forcefully objecting to the arbitrators deciding their dispute with First Options, one naturally would think that they did *not* want the arbitrators to have binding authority over them.

*Id.* (emphasis in original). The Court therefore held that the arbitrator's decision of arbitrability was to be reviewed de novo. *Id.* at 944, 115 S.Ct. 1920.

PowerAgent's position in this case is quite different from that of the defendants' posture in *First Options.* PowerAgent was the *plaintiff* in arbitration and affirmatively sought to submit the issue of arbitrability to the arbitration panel, arguing in favor of the arbitrators' authority to decide the issue.

PowerAgent outlined its position in its Amended Notice of Arbitration:

Please take notice that [PowerAgent] hereby seeks a declaration of the rights and obligations of itself and [EDS], as follows:

(a) *whether the claims set forth in the [Amended Complaint] are subject to arbitration pursuant to a written arbitration agreement between the parties;*

(b) in the alternative, whether EDS has waived its right to arbitration of any claims asserted in the California Action, and

(c) in the alternative, if the claims in the Amended Complaint are subject to arbitration and EDS has not waived its right to arbitration, whether EDS is liable to PowerAgent on any of the claims in the Amended Complaint.

Although EDS argued that the arbitration panel was bound by the district court's order, PowerAgent clearly requested that the arbitration panel independently address the issue of arbitrability and maintained that it had the authority to do so:

It may be unusual for a claimant to ask the tribunal to find that it has no jurisdiction, but the unique procedural history of this case requires such a step.

The AAA Rules, federal arbitration law, and applicable state law all recognize that arbitrators have authority to rule on their own jurisdiction in various circumstances—including where, as here, the district court refused to determine whether the claims at issue were subject to arbitration.

Having affirmatively urged the arbitrators to decide arbitrability and asserted their authority to do so, PowerAgent cannot await the outcome and, after an unfavorable decision, challenge the authority of the arbitrators to act on that very issue. We so held in closely analogous circumstances in *Tristar Pictures, Inc. v. Dir.'s Guild of Am.,* 160 F.3d 537, 540 (9th Cir. 1998) (citing *Ralph Andrews Prods., Inc. v. Writers Guild of Am., West,* 938 F.2d 128, 130 (9th Cir.1991)). Unlike in *First Options,* in *Tristar Pictures,* the court found that the party seeking a judicial determination regarding arbitrability had clearly evinced its intent to be bound by the arbitrators' decision on the question. *Tristar Pictures,* 160 F.3d at 540. We held that where there is clear evidence of a party's intent to be bound by the arbitrator's decision on the issue of arbitrability, that party is estopped from later changing its position and challenging the arbitrator's authority to determine the issue of arbitrability. *Id.*

█ Although *Tristar* did not so indicate, its holding is closely analogous to the doctrine of judicial estoppel—that is, the principle that a litigant may not benefit by making directly contradictory arguments regarding the same dispute in different tribunals. *See Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782–83 (9th Cir.2001) (holding that judicial estoppel precludes a party from gaining an advantage by asserting one position and then later—after a tribunal relied on or accepted that position—taking a clearing incon-

sistent position in either the same litigation or a different case concerning the same dispute).

*Tristar Pictures* involved a collective bargaining agreement ("CBA"), while this case does not, and in this circuit CBAs have been held to be outside the coverage of the Federal Arbitration Act ("FAA"). *Kemner v. Dist. Council of Painting and Allied Trades No. 36*, 768 F.2d 1115, 1118 n. 1 (9th Cir.1985). The FAA did apply in *First Options* and does apply here.[1] No reason appears, however, why the same estoppel principle at work in *Tristar Pictures* should not apply to this case, as it is fully consistent with concerns discussed in *First Options*.

PowerAgent was not required to present the issue of arbitrability of the Amended Complaint to the arbitrators. Indeed, EDS argued that the district court had already determined that the dispute was arbitrable and that the arbitrators did not have authority to decide otherwise. After the petition for mandamus was denied, PowerAgent could have arbitrated only the original complaint, awaited a final resolution of the case, and then appealed the decision of the District Court to strike the Amended Complaint. Instead, PowerAgent voluntarily requested that the arbitration panel address the arbitrability of the entire dispute including the Amended Complaint and affirmatively argued that the arbitrators had the authority to do so. Once it determined that the claims in the Amended Complaint were arbitrable, the arbitration panel resolved those claims in

EDS's favor. PowerAgent is now bound by the arbitration panel's findings on arbitrability and the merits unless it can overcome the highly deferential standard of review employed by the federal courts regarding arbitrators' holdings. *See, e.g., San Martine Compania De Navegacion v. Saguenay Terminals Ltd.*, 293 F.2d 796, 801 (9th Cir.1961).

The district court, therefore, correctly applied a deferential standard of review to the arbitrators' decisions. *See id.* (holding that an arbitration award will not be vacated unless it exhibits a "manifest disregard of the law"). While we review de novo the decision to vacate or confirm an arbitration award, review of the award itself is "both limited and highly deferential" and an arbitration award may be vacated only if it is "completely irrational" or "constitutes manifest disregard of the law." *Coutee v. Barington Capital Group*, 336 F.3d 1128, 1132–33 (9th Cir. 2003).

There is nothing in the arbitration panel's decisions to suggest that they are either completely irrational or constitute a manifest disregard of the law. On the contrary, the arbitrators addressed the issues presented to them by the parties and reached findings based on the evidence provided. With regard to the arbitrability of the Amended Complaint, the issue now in dispute, the arbitration panel held that the claims in the Amended Complaint were subject to the arbitration clause in the Services Agreement because the written

---

1. The Supreme Court overruled our prior precedent that the FAA does not apply to any employment contracts and held, in a case involving an individual employment contract, that the FAA applies to all individual employment contracts except those involving transportation workers. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). *Circuit City* did not address a CBA, and we have not considered, and do not here consider, its application to such agreements. *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451–52, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (holding that collective bargaining agreements are enforceable under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, over Justice Frankfurter's dissent noting implicit rejection by the majority of FAA coverage).

contracts and the purported subsequent oral contracts were interrelated, as part of the same ongoing transaction or series of transactions.

In particular, the arbitration panel found that the investment commitments were made in exchange for PowerAgent's commitments to engage EDS's services, and that the money invested was intended in part to pay for those services. As to the last oral commitment for further investments, again the intended *quid pro quo* was a change in the Services Agreement favorable to EDS. Nothing about this analysis is completely irrational or manifestly disregards the law. We therefore affirm the district court's order confirming the arbitration award.

**AFFIRMED.**